IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-225-RJ

LAMAR MAURICE DENTON,

Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-13, -17, -18]. Claimant Lamar Marice Denton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI payments on February 1, 2021, alleging disability beginning October 1, 2017. (R. 24, 243–54). The claims were denied initially and upon reconsideration. (R. 62–89). A hearing before an Administrative Law Judge ("ALJ") was held on November 20, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 40–61). On March 26, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 21–39), and the Appeals Council denied Claimant's request for review, (R. 1–6). Claimant then filed a

complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date of October 1, 2017. (R. 26). Next, the ALJ determined Claimant had severe impairments of degenerative disc disease; cervical stenosis; myelopathy; paranoid schizophrenia; major depressive disorder; alcohol and substance abuse; and attention deficit hyperactivity disorder ("ADHD"). (R. 26). The ALJ also found Claimant's tobacco use,

hypertension, and postoperative wound infection were non-severe impairments within the meaning of the statute. (R. 27). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27–28). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and moderate limitations in interacting with others; and adapting or managing oneself. (R. 27–28).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform medium work[1] with the following limitations:

> [H]e can tolerate occasional interaction with co-workers and supervisors but no interaction with the public and he requires a work environment with few to no changes and no production pace or quotas.

(R. 28–32). In making this assessment, the ALJ found Claimant's statements about his limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 29). At step four, the ALJ concluded Claimant was unable to perform his past relevant work; nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he could perform. (R. 32–33).

## V. DISCUSSION

Claimant asserts the RFC assessment is not supported by substantial evidence because the

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

ALJ failed to properly develop the record following Claimant's mid-2022 hospitalization. Pl.'s Br. [DE-13] at 5–12; Pl.'s Reply [DE-18]. The Commissioner contends that the ALJ properly evaluated the evidence and that substantial evidence supports the ALJ's RFC determination. Def.'s Br. [DE-17] at 8–15.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

"The ALJ has a responsibility to 'explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate.'" *Honeycutt v. Kijakazi*, No. 5:20-CV-438-RJ, 2022 WL 708523, at *9 (E.D.N.C. Mar. 9, 2022) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). "However, this 'duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Id.* (quoting *Baysden v. Colvin*, No. 4:12-CV-303-FL, 2014 WL 1056996, at *9 (E.D.N.C. Mar. 18, 2014)). "While 'the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's substitute counsel.'" *Id.* (quoting *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994)). "Moreover, the ALJ's duty to develop the record 'does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.'" *Id.* (first quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); and then citing 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d); *Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (rejecting the argument that the ALJ erred in failing to develop the record where, at the hearing before the ALJ, claimant's counsel did not indicate or suggest to the ALJ that any medical records from one of the physicians were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records), *adopted*, 2012 WL 4357013 (E.D.N.C. Sep. 21, 2012); *White v. Colvin*, No. 5:13-CV-757-RN, 2015 WL 1438747, at *9 (E.D.N.C. Mar. 27, 2015)).

Claimant asserts the ALJ failed to fulfill her duty of exploring "all relevant facts and

inquir[ing] into issues necessary for adequate development of the record." Pl's Br. [DE-13] at 5 (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *Naomi S. v. O'Malley*, No. 1:23-CV-184, 2024 WL 4275864, at *8 (M.D.N.C. Sept. 24, 2024) (requiring remand when the ALJ gave an opinion little weight because it was based on a consultative examination that was not in the record)). Claimant takes issue particularly with the RFC determination being made without support from any of the state agency consultants' opinions. *Id.* at 6. The state agency consultants at the initial and reconsideration levels of review found there was insufficient evidence to adjudicate the claim. (R. 31, 62–67, 70–75, 77–82, 84–89). Due to this, the ALJ determined these opinions were unpersuasive, noting she had sufficient information at the date of the hearing, including the Claimant's testimony, to issue a decision. (R. 31).

Claimant omits from his briefing any explanation as to why the state agency consultants found the medical record to be insufficient, but he does take issue with the fact that the consultants had no medical records to assess following his May 2022 surgery and hospitalization. Pl.'s Br. [DE-13] at 6. At the initial level of review, the consultants reported attempting to call Claimant on May 11, 2020; May 24, 2021; and again, on June 3, 2022, receiving no answer and a message stating the line was out of service. (R. 72, 73). On May 11, 2021, they were able to contact Claimant's attorney, who stated he would try to contact Claimant and have him call. *Id.* Additionally, throughout this period, call-in letters were sent to the Claimant and his attorney. *Id.* Neither Claimant nor his attorney responded to the consultants' requests to contact them, and they issued their final opinions on June 10, 2022. *Id.*

The undersigned acknowledges at the time the initial reviewers were attempting to contact Claimant he was facing ongoing health issues which required immediate surgery and an extended period of hospitalization. Claimant had fusion surgery completed on May 20, 2022. (R. 584). He

was discharged on May 24th but returned on May 29th after experiencing worsening neck pain and drainage from the surgical site. (R. 589). Claimant was then treated for a MRSA infection, requiring washout and antibiotics, before being transferred to the extended care program. (R. 598). He was not a candidate for home infusion due to his history of intravenous drug use. *Id.* Furthermore, Claimant's records indicate he did not have stable living conditions and was possibly homeless at the time. (R. 635). Claimant was discharged from the extended care unit on July 11, 2022. (R. 584–85).

That was not Claimant's only opportunity to complete the record prior to a state agency consultant's review. At the reconsideration level the consultants had records up to May 2022, which indicated Claimant had cervical decompression and neck pain. (R. 79, 86, 87). Again, finding the record insufficient, the consultants made attempts to get more records from the Claimant or his attorney, this time in March and April of 2023, but again they received no response. *Id.* They issued their final opinions, that there was insufficient information, on April 19, 2023. *Id.* Furthermore, at the hearing Claimant's attorney did not raise any objections regarding the state agency consultants' opinions and stated he had an opportunity to review the record. (R. 45); *see also Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."). As noted in the ALJ's opinion, although the state agency consultants did not have access to Claimant's medical records past May 2022, the ALJ did have those records, in addition to Claimant's testimony. (R. 31).

Claimant takes issue with the ALJ's determination that he can perform a full range of medium work with social restrictions and pace limitations, opining that this determination was

based on the ALJ's "lay interpretation" of medical data. Pl.'s Br. [DE-13] at 6. Claimant contends although the ALJ had the complete record, this is insufficient because the ALJ is unable to interpret medical notes. Pl.'s Br. [DE-13] at 7 (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020)108–09 ("ALJs may not draw their own conclusions from medical imaging, as they lack the expertise to interpret it.") (citing *Hoyt v. Colvin*, 553 F. App'x 625, 627 (7th Cir. 2014) (holding that ALJ erred "by interpreting [claimant's] electromyography exam and lumbar MRI as inconsistent with his complaints of pain")). In *Arakas*, the Fourth Circuit found the ALJ improperly substituted "his own lay opinion for a medical expert's" when he discounted a doctor's opinion that an MRI evidenced chronic cervical spasms; instead, the ALJ concluded "that an MRI would not document a chronic condition of spasm." *Arakas*, 983 F.3d at 109. The ALJ in *Arakas* disregarded a medical opinion by making a blanket claim based on his own lay assumptions, unsupported by anything in the record. *Id.* Here, no such finding occurred, thus Claimant's reliance on *Arakas* is misplaced. *See Lindsey v. Bisignano*, No. 4:24-CV-149-KS, 2026 WL 734661, at *3 (E.D.N.C. Mar. 16, 2026) (finding no error where, without the benefit of medical opinion evidence, the ALJ assessed the claimant's RFC based on the record and evidence and the claimant's statements about his symptoms). The ALJ was not required to obtain an expert medical opinion in order to formulate Claimant's RFC. *See Caulkins v. Kijakazi*, No. 20-1060, 2022 WL 1768856, at *5 (4th Cir. June 1, 2022) ("suggestion that the ALJ's residual function capacity analysis must be set aside simply because 'the ALJ is a layman and did not obtain an expert medical opinion' misapprehends the agency's administrative review process.") (citing *Felton-Miller*, 459 F. App'x at 231); *Broussard v. Colvin*, No. 5:12-CV-398-FL, 2013 WL 5370592, at *3 (E.D.N.C. Sept. 24, 2013) (rejecting argument that "the ALJ erred because he failed to complete a Mental RFC Assessment form (SSA–4734–F4–SUP), and failed to obtain an expert medical opinion as to

plaintiff's mental RFC" where the ALJ thoroughly discussed the medical records and assessed the claimant's RFC in accordance with the regulations).

Specifically, Claimant asserts the ALJ improperly interpreted his hospitalization and inpatient occupational therapy notes, making it seem like he was discharged without deficits. Pl.'s Br. [DE-13] at 7. The ALJ concluded when Claimant was discharged he had full motor strength, full range of motion, and ambulated independently. (R. 30). Claimant points to several notes in the record that indicate at times during Claimant's hospitalization he had impaired coordination, lower extremity weakness, an unstable gait, and that he ambulated with a single point cane. Pl.'s Br. [DE-13] at 7 (citing R. 651–62, 677, 679, 680, 999). However, it is not the role of this court to reweigh the evidence, and simply pointing to evidence that could support a finding of disability is not sufficient to require remand. *See Caulkins*, 2022 WL 1768856, at *5 ("Reasonable minds may differ as to the appropriate weight the ALJ should have assigned to various pieces of evidence in the record," and " [s]ubstantial evidence review does not permit [the court] to supplant the ALJ's judgment with [its] own" where the court can trace the ALJ's reasoning and it is supported by substantial evidence) (citation omitted); *Allen v. Kijakazi*, No. 2:20-CV-89-M, 2022 WL 3655488, at *9 (E.D.N.C. Aug. 4, 2022) ("[T]he fact that Claimant point to other evidence that supports her position does not render the ALJ's decision unsupported.") (quoting *Lilley v. Saul*, No. 4:19-CV-93-RJ, 2020 WL 3884429, at *11 (E.D.N.C. July 9, 2020)), *adopted*, 2022 WL 3655217 (E.D.N.C. Aug. 24, 2022). Accordingly, because the ALJ applied the correct legal standards and the decision is supported by substantial evidence, the decision of the Commissioner is affirmed.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is affirmed.

So ordered, the 14th day of September 2026.

Robert B. Jones, Jr.
United States Magistrate Judge